

**SO ORDERED.**

**SIGNED this 10 day of December, 2007.**

_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **GEORGE R. HOKANSON and**<br>**IVY L. HOKANSON,** | **CASE NO. 04-14015**<br>**CHAPTER 7** |
| **DEBTORS.** | |
| **LINDA S. PARKS, Chapter 7 Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 06-5492** |
| **PROGRESSIVE NORTHERN**<br>**INSURANCE COMPANY,** | |
| **DEFENDANT.** | |

## MEMORANDUM ON DEFENSE OF LACK OF
## SUBJECT MATTER JURISDICTION

The matter before the Court is the Defendant's contention that the Court lacks jurisdiction over the Trustee's Complaint for Willful Violation of Bankruptcy Stay. Plaintiff, Linda S. Parks, in her capacity as the Chapter 7 Trustee (hereafter Trustee), appears by Gaye B. Tibbets, of Hite, Fanning & Honeyman, L.L.P. Defendant, Progressive Northern Insurance Company (hereafter Progressive), appears by Kevin M. McMaster and Dallas L. Rakestraw of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. There are no other appearances. The Court has jurisdiction over adversary proceedings alleging violation of the automatic stay.[1]

**FINDINGS OF FACT.**

The allegation of violation of the stay relates to Trustee's attempt to recover, for the benefit of the estate, damages suffered by Debtors in a prepetition automobile accident. The underlying facts are not in dispute.

On December 19, 2003, Debtors were involved in an automobile accident. The other vehicle was driven by Karen Lambert, who was insured by Allstate Insurance Company (hereafter Allstate). The Allstate policy obligated it to defend any claim against Karen Lambert arising from the accident and gave it the right to control any settlement.[2]

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for relief from stay is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[2] The record does not include the Allstate policy. The Court makes this finding of fact based upon its knowledge of Kansas automobile liability polices.

Case 06-05492   Doc# 66   Filed 12/10/07   Page 2 of 15

Debtors had Personal Injury Protection (PIP) pursuant to a policy of insurance they had purchased from Defendant Progressive. Defendant paid PIP benefits of $9,000 to Debtors pursuant to that policy.

On July 21, 2004, Debtors filed a voluntary petition under Chapter 7, and their claim against Karen Lambert became property of the estate. Plaintiff Linda S. Parks was appointed case trustee. On September 20, 2005 or before, Progressive was notified of the bankruptcy filing. Progressive corresponded with the Trustee. On December 8, 2005, Trustee filed suit in Kiowa County, Kansas against Karen Lambert.

Progressive and Allstate are members of an intercompany Personal Injury (no-Fault) Arbitration Agreement handled through Arbitration Forums, Inc. Pursuant to that agreement, they agreed to arbitrate "all disputes arising from the pursuit of subrogation, reparations, reimbursement, indemnity or direct action recovery rights created by the payment of claims or benefits to insureds . . . under Automobile Accident Reparations Statutes, or in the absence of a statute those subrogation claims created by a Voluntary Personal Injury Protection Endorsement." On December 13, 2005, just a week after the Trustee filed suit against Karen Lambert, Progressive filed an arbitration claim against Allstate to recover $9,000 in PIP benefits payments made to Debtors. In the absence of a response from Allstate, on March 20, 2006, an award of $9,000 was entered in favor of Progressive. By letter dated, August 9, 2006, the attorney for the Trustee advised Progressive that the Trustee viewed Defendant's seeking of recovery from Allstate to be an interference with her personal injury suit and a violation of the stay. Thereafter, Progressive filed a state court lawsuit asking for enforcement of its arbitration award.

3

On October 30, 2006, Trustee filed her Complaint for willful violation of the stay. Trustee alleged that Progressive's arbitration claim was an attempt to collect funds from property of the estate committed with knowledge that a bankruptcy stay existed. In response, Progressive alleged, in part, that the Court lacks jurisdiction over this proceeding. The Court requested briefs on the jurisdiction defense. The briefs have been submitted, and the Court is now ready to rule.

**POSITIONS OF THE PARTIES.**

Progressive's brief on the Court's jurisdiction argues that Progressive has made no claim to any property of the estate. It agrees that the Trustee has the right to pursue the personal injury claim against Karen Lambert and, if she is awarded a judgment, to collect that judgment for the benefit of the estate. However, Progressive argues that before a judgment is entered in her favor in the Kiowa County case, the Trustee has no right to any liability policy proceeds. Progressive also asserts is has made no claim to any proceeds of the estate's personal injury recovery and the arbitration is a dispute between two insurance companies that is independent of the bankruptcy.

Trustee responds that under the Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 et. seq. (KAIRA), Progressive has no right to interfere with Trustee's cause of action. She argues that the KAIRA limits Progressive's right to recover the PIP benefits paid to an insured to two alternatives, neither of which are available once the tort victim has filed for Chapter 7 relief. In other words, she alleges that Progressive is pursuing a claim it has no legal right to pursue to the detriment of the estate.

4

**ANALYSIS AND CONCLUSIONS OF LAW.**

      **A. RIGHTS AND REMEDIES AUTOMOBILE ACCIDENT VICTIMS AND THEIR LIABILITY CARRIERS.**

Before analyzing the parties' legal contentions, the Court pauses to examine the rights and liabilities of automobile accident victims and the insurance carriers involved under Kansas law. Ordinarily, liability policies include a duty to defend.[3] Under Kansas law, a liability carrier with a duty to defend a claim also has a duty to participate in settlement negotiations in good faith.[4] Generally, insurers control settlements.[5] An injured party has a claim in tort against the tortfeasor, but no right of direct action against the tortfeasor's liability carrier.[6] If a judgment against the tortfeasor is not satisfied, the injured party may not file an action against the tortfeasor's liability carrier insurer on the same claim but may garnish the tortfeasor's liability carrier.[7] There is often a substantial delay between the date of accident and recovery of damages. "The purpose of [the KAIRA] . . . is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."[8] Pursuant to the

---

[3] 14 Couch on Insurance § 200:1 (3rd ed. 2007).

[4] *Smith v. Blackwell*, 14 Kan. App.2d 158, 163, 791 P.2d 1343, 1346 (1989) pet. rev. denied Jan. 26, 1990 (stating, "The fiduciary relationship of the insurer and the insured imposes a duty upon the insurer to make reasonable efforts to negotiate a settlement of a claim against the insured," regardless of the actions of the insured).

[5] 14 Couch on Insurance §§ 203:2 and 203:3.

[6] *White v. Goodville Mutual Casualty Co.*, 226 Kan. 191, 596 P.2d 1229 (1979).

[7] *King v. American Family Ins. Co.*, 19 Kan. App.2d 620, 874 P. 2d 691 (1994).

[8] K.S.A. 40-3102.

KAIRA, each liability policy must contain a provision for PIP benefits,[9] defined to include

disability benefits and medical benefits.[10]

The KAIRA addresses recovery by an insurance carrier which had made PIP payments.

K.S.A. 40-3113a in relevant part provides:

> (a) When the injury for which personal injury protection benefits
> are payable under this act is caused under circumstances creating a
> legal liability against a tortfeasor . . ., the injured person . . . shall
> have the right to pursue such person's remedy by proper action in a
> court of competent jurisdiction against such tortfeasor.
>
> (b) In the event of recovery from such tortfeasor by the injured
> person, . . . by judgment, settlement or otherwise, the insurer . . .
> shall be subrogated to the extent of duplicative personal injury
> protection benefits provided to date of such recovery and shall
> have a lien therefor against such recovery and the insurer . . . may
> intervene in any action to protect and enforce such lien. . . .
>
> (c) In the event an injured person, such person's dependents or
> personal representative fails to commence an action against such
> tortfeasor within 18 months after the date of the accident resulting
> in the injury, such failure shall operate as an assignment to the
> insurer . . . of any cause of action in tort which the injured person,
> . . . may have against such tortfeasor for the purpose and to the
> extent of recovery of damages which are duplicative of personal
> injury protection benefits.  Such insurer or self-insurer may
> enforce same in such person's own name or in the name of the
> injured person, . . . by proper action in any court of competent
> jurisdiction.

In this case, the Progressive policy included PIP coverage.  The policy provides, "If you

purchase this coverage and it is shown on the Declarations page, we will pay medical expenses

incurred by an insured caused by an accident."  Accordingly, after the accident but before

Debtors  filed for bankruptcy protection, Progressive paid PIP benefits.

---

[9] K.S.A. 40-3107(f).

[10] K.S.A. 40-3103(q).

6

Pursuant to the KAIRA, when making PIP payments, Progressive acquired "two distinct interests," a subrogation right and a lien in any duplicative recovery.[11]  Under Kansas law, in the event the injured parties recover by judgment, settlement or otherwise, the injured parties' insurer is subrogated to the extent of duplicative PIP benefits provided and granted a statutory lien for such benefits against the recovery, including the right to intervene in any action to protect and enforce the lien right.  Further, if the injured party does not bring suit to recover from the tortfeasor within 18 months of the injury, the PIP insurer may sue the tortfeasor.[12]  In addition, Progressive's recovery rights are addressed by the policy issued to the Debtors as follows:

### 5. Our Recovery Rights

In the event of any payment under the Policy, we are entitled to all the rights of recovery of the person or organization to whom payment was made.  . . .

When a person had been paid damages by us under this Policy and also recovers from another, the amount recovered from the other shall be held in trust for us and reimbursed to us to the extent of our payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their loss.

The parties agree that Debtors' filing for bankruptcy relief has modified the foregoing rights in three significant respects.  First, Debtors' claim against Karen Lambert became property of the estate, and the Chapter 7 Trustee became the party with the right to sue.[13]  Second, the automatic stay of § 362 was imposed, generally prohibiting actions to recover property of the

---

[11] *In re White*, 297 B.R. 626, 630 (Bankr. D. Kan. 2003).

[12] K.S.A. 40-3113a(c).

[13] *E.g., Nazar v. Allstate Ins. Co. (In re Veazey)*, 272 B.R. 486, 493 (D. Kan. 2002).

7

estate or to assert claims against the Debtors. Third, Progressive's subrogation and lien rights were cut off because they were not vested on the date of filing.[14] K.S.A. 40-3113a(b), the statutory source of Progressive's rights, has been construed to state that the right of subrogation and the insurer's lien arise only after a recovery from the tortfeasor. In this case, if there is recovery from Karen Lambert, the recovery will not occur until long after the bankruptcy filing, at a time when the stay will prohibit assertion of rights to the recovery under a subrogation theory or attachment of a lien in the proceeds. Likewise, an insurer's claim to exclusion from the estate of duplicative recovery under a constructive trust theory based upon policy language similar to that of Progressive has been rejected under Kansas law.[15] Progressive agrees that it has no right to pursue the Debtors or to pursue Karen Lambert as subrogee of the Debtors and will have no lien on or interest in any portion of the recovery by the Trustee. As to the Debtors and the estate, its right to reimbursement is an unsecured claim.

To overcome these bankruptcy law limitations on its recovery rights, Progressive filed an arbitration action against Allstate to recover the PIP benefits paid to Debtors. Allstate permitted an award for the $9,000 PIP coverage paid to the Debtors to be entered against it. Progressive has filed an action to enforce the award, but the record includes no facts as to the status of that case, including whether Allstate is defending the claim.[16] For purposes of analyzing the

---

[14] *Id.*, 272 B.R. at 494-95; *In re White*, 297 B.R. at 630-34.

[15] *In re White*, 297 B.R. at 635-36.

[16] It appears to the Court that Allstate does have defenses. Progressive does not respond to the merits of Trustee's legal argument that it lacks authority to recover from Allstate, and the Court will not rule on this question. However, pursuant to the Personal Injury Protection (No -Fault) Arbitration Agreement in the record, the signatory insurance companies agreed to arbitrate "all disputes arising from the pursuit of subrogation, reparations, reimbursement, indemnity or direct action recovery rights created by the payment of claims or benefits to insureds . . . under Automobile Accident Reparations Statutes, or

8

Trustee's assertion of violation of the stay, the Court will assume that a judgment will be entered

against Allstate.

**B. PROGRESSIVE VIOLATED THE STAY WHEN ATTEMPTING TO RECOVER REIMBURSEMENT FOR PIP BENEFITS PAID TO THE DEBTORS FROM ALLSTATE.**

Turning to the merits of this case, the Trustee's Complaint is for violation of the § 362

stay, specifically §§ 362(a)(3) (acts to obtain possession of property of the estate or property

from the estate), (a)(4) (acts to create, perfect or enforce liens against property of the estate), and

(a)(5) (acts to create, perfect or enforce any lien against property of the debtor).  "The stay of

section 362 is extremely broad in scope and, aside from the limited exceptions of subsection (b),

applies to almost any type of formal or informal action taken against the debtor or the property of

---

in the absence of a statute those subrogation claims created by a Voluntary Personal Injury Protection Endorsement"and that such arbitration jurisdiction shall conform to the applicable statute or voluntary endorsement.  However, pursuant to the personal Protection Arbitration Rules and Regulations, the arbitration agreement shall not be construed to create "any cause of action or liabilities that do not exist in law or equity."  Progressive identifies no source for a cause of action against Allstate.  Although at one time the KAIRA authorized an insurer who paid PIP benefits to recover directly from the tortfeasor's liability carrier through arbitration, the current KAIRA contains no such provision. *See Easom v. Farmers Ins. Co., Inc.*, 221 Kan. 415, 420-21, 560 P.2d 117, 122 (1977) (interpreting subsection (c) of K.S.A. 40-3113 as providing the insurer who does not bring suit against the third party tortfeasor the alternative of "arbitration of reimbursement between the injured party's insurer and the insurer of the tort-feasor, if insured").  K.S.A. 40-3113 was repealed in 1977 and K.S.A. 40-3113a enacted in its place. L. 1977 ch. 164.  The new provision omitted the insurers' right of action against the tortfeasor and right to arbitrate with the tortfeasor's carrier.  As the Trustee argues, there is a basis to construe the remedies granted by K.S.A. 40-3113a as exclusive, and the statutory remedies do not include a claim against the tortfeasor's liability carrier.  There is reason to question whether Progressive has any common law right against Allstate which were independent of Progressive's rights against Karen Lambert and the Debtors, which rights were cut off by the bankruptcy.

9

the estate."[17]  Trustee asserts that Progressive's action in obtaining an arbitration award against

Allstate has interfered with her settlement negotiations. She states:

> The Trustee began negotiating with Lambert's insurer to settle the
> personal injury claim.  Lambert's insurer explained that any judgment or
> settlement would have to take into account that it had already satisfied its
> obligation to reimburse Progressive for PIP payments because Progressive
> had recovered an arbitration award for the benefits it had paid.[18]

Trustee further asserts that Progressive had no legal right to the arbitration award, since its lien

and subrogation rights are not enforceable against the potential recovery, which is property of

the estate.  In conclusion, Trustee states, "Progressive's interference in that cause of action when

it has no legal right of recovery is a violation of the automatic stay."

Progressive responds that its actions are independent of the estate, that the arbitration

award is against a third parry, not the Debtors or the tort recovery.  It argues that Allstate has no

right to offset or reduce its payment to the Trustee by the amount paid to Progressive; that

Trustee sites no case law or statute which prevents Allstate from being required to pay both the

Trustee and Progressive.

The parties agree the stay bars Progressive from asserting a lien in the future proceeds of

the tort claim or pursuing a subrogation claim against the Karen Lambert.[19]  The question posed

by this case is whether without violation of the stay Progressive can do indirectly what it cannot

do directly and be reimbursed by Karen Lambert's liability carrier.  Another way to state the

---

[17] 3 *Collier on Bankruptcy* ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

[18] Doc. 62.

[19] *Id*.

10

issue using § 541 language is whether, for purposes of § 362, the estate's property interest in the cause of action includes the obligations of the tortfeasor's liability carrier.

The subsections of § 362 on which the Trustee relies address acts against property of the estate and property of the debtor. Section 541 defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." The Tenth Circuit has pointed out that the scope of "section 541 is broad and should be generously construed, and that an interest may be property of the estate even if it is 'novel or contingent.'"[20] The determination of property rights in the assets of the estate is determined under state law.[21]

It is well settled that upon filing of a bankruptcy, any causes of action belonging to the Debtor at the time of filing become property of the estate pursuant to § 541(a)(1).[22] This includes claims that are contingent and unliquidated. However, the estate property does not extend to causes of action that accrue after the filing of the petition.[23]

Applying these principles to this case, the Debtors' claim against Karen Lambert is property of the estate. The claim existed under Kansas law on the date of filing, even though it was unliquidated. However, under Kansas law, on the date of filing the Debtors had no cause of action against Allstate. Because automobile policies are basically policies of indemnity rather

---

[20] *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000).

[21] *Butner v. United States*, 440 U.S. 48, 57 (1979).

[22] *E.g., Sender v. Buchanan (In re Hedged-Investments Associates, Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996).

[23] *E.g., Harms v. Cigna Ins. Companies*, 421 F. Supp.2d 1225, 1228 (D.S.D. 2006) (holding that debtor had no duty to disclose causes of action that accrue after the filing of the petition); *Carroll v. Henry County, Ga.*, 336 B.R. 578 (N.D. Ga. 2006) (holding that a federal civil rights claim for debtors alleged false arrest and malicious prosecuting, which had not accrued on petition date before the underlying criminal prosecution terminated in debtor's favor was not included in property of the estate).

11

than liability, Kansas does not authorize an injured party to bring a direct action against the insurer of an allegedly negligent motorist.[24] The injured party's remedy against the insurer is limited to post-judgment garnishment, the right to which accrues after there is an unsatisfied judgment against the insured. Therefore, under § 541, the property of the estate does not include a cause of action to recover from Allstate based upon its policy with Karen Lambert. For the following reasons, the Court rejects this reasoning as too narrow a view of § 541 to answer the issue before the Court.

For purpose of determining the scope of the stay imposed by § 362, to regard the liability of the tortfeasor's insurer as distinct and separate from the liability of the tortfeasor to the estate is an artificial construct that is contrary to the purpose of the stay. From the perspective of the Trustee, assuming that Karen Lambert's liability to Debtors is not in excess of policy limits,[25] the interests of Allstate and Karen Lambert with respect to settlement and payment of any amounts due are indistinguishable. On the date of filing, Allstate's duties to negotiate in good faith to settle the Debtors' claim against Karen Lambert, to defend such a claim, and to pay any judgment within policy limits had vested and were an integral part of the cause of action owned by the estate. For all practical purposes, it is Allstate, not the tortfeasor who will negotiate with the Trustee regarding settlement and make payment to the Trustee of any recovery, up to policy limits. For purposes of determining the scope of the § 362 stay, because of the identity of

---

[24] *White v. Goodville Mutual Casualty Co.*, 226 Kan. at 191, 596 P.2d at 1229.

[25] The parties have not advised the Court of the amount of Debtors' claim against Karen Lambert or the limits of Allstate's liability under the Lambert policy. If the claim is significantly in excess of policy limits, the Court believes that the limits would have been tendered, the Court would have been informed of this fact, and the Trustee's arguments in her brief would not have included problems relating to settlement.

12

interest[26] between Allstate and the tortfeasor, the stay should apply to actions to acquire property from Allstate to the same extent it applies to actions to recover property from the tortfeasor. Absent such a construction the purpose of the stay to prevent "chaotic and uncontrolled scramble for debtor's assets in a variety of uncoordinated proceedings in different courts"[27] would not be realized. The stay of Progressive from exercising its remedies under the KAIRA would be meaningless if it were not stayed from recovery of the same claim from Allstate.

To adopt Progressive's position that it may recover postpetition from Allstate would negate the effect of the stay with respect to Progressive's subrogation and lien rights under the KAIRA. The reality is that Progressive's arbitration award to recover reimbursement of the PIP payments from Allstate will have the same impact on the Trustee's litigation as would result if Progressive were permitted to directly assert its subrogation claim or a lien in the recovery, acts which Progressive agrees are prohibited by the stay. Progressive's claim is based upon Allstate's liability under its policy with Karen Lambert. It is unrealistic to suppose that Allstate would settle Karen Lambert's claim or tender policy limits without consideration of Allstate's potential liability to Progressive pursuant to the arbitration award. Progressive's actions have therefore impaired the Trustee's ability to settle the tort claim for the maximum recoverable. Further, assuming the case goes to trial and a judgment is entered, whether within or in excess of policy limits, it is unrealistic to assume that Allstate will not withhold the amount of the arbitration award from the amount it agrees is due under its liability coverage. The only

---

[26] For purposes of determining whether non-debtor co-defendants are protected by the § 362 stay, courts have applied an identity of interest standard. *E.g, A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

[27] *Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F. 3d 956, 961 (7th Cir. 1996).

13

circumstance the Court can envision where the arbitration award would be irrelevant is if

Progressive were to waive its right to enforcement of the arbitration award, which it has not

done.  If the Court does not intervene and the award is not set aside because obtained in violation

of the stay, the Trustee will most likely have the choice of accepting the offered payment or

attacking the validity of Progressive's arbitration award in order to maximize the estate's

recovery.

The Court therefore holds that the estate has a property interest in the Allstate policy

owned by Karen Lambert at the time of the accident and that Progressive violated the stay when

seeking reimbursement from Allstate for the PIP payment.  Those actions included the filing of

the arbitration proceeding, the entry of the award, and the filing of the state court action to

enforce the award.  Actions taken in violation of the stay are void.[28]  The arbitration award is of

no force and effect.  The effect of violation of the stay is to deprive Progressive of the benefit

obtained as a result of the violation.[29]

**CONCLUSION.**

For the foregoing reasons, the Court holds that Progressive violated the § 362 stay when,

with notice of the Debtors' bankruptcy and the Trustee's interest in the tort claim against Karen

Lambert, it requested, obtained, and filed an action to enforce an arbitration award against

Allstate for reimbursement of the PIP benefits paid prepetition to the Debtors.

The Court has undertaken its analysis and made its findings of fact and conclusions of

law based upon a limited record and on a basis not directly briefed by the parties.  If the factual

---

[28] *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994).

[29] *Goldston v. United States (In re Goldston)*, 104 F.3d 1198, 1201 (10th Cir. 1997).

14

assumptions or findings are contrary to the true circumstances or the Court, in the opinion of

counsel, has misconstrued significant issues of law, the Court invites the parties to within 10

days file motions to alter or amend this order pursuant to Bankruptcy Rule 9023, which makes

Federal Rule of Civil Procedure 59 applicable to bankruptcy proceedings.

     **IT IS SO ORDERED.**

###