

**SO ORDERED.**

**SIGNED this 27 day of February, 2008.**

*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON-LINE AND PRINT PUBLICATION
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| GEORGE R. HOKANSON and<br>IVY L. HOKANSON, | CASE NO. 04-14015<br>CHAPTER 7 |
| DEBTORS. | |
| LINDA S. PARKS, Chapter 7 Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 06-5492 |
| PROGRESSIVE NORTHERN<br>INSURANCE COMPANY, | |
| DEFENDANT. | |

**MEMORANDUM OPINION AND ORDER DENYING PROGRESSIVE'S
DEFENSE OF LACK OF SUBJECT MATTER JURISDICTION**

The matter before the Court is the Defendant's contention that the Court lacks jurisdiction over the Trustee's Complaint for Willful Violation of Bankruptcy Stay. Plaintiff, Linda S. Parks, in her capacity as the Chapter 7 Trustee (hereafter Trustee), appears by Gaye B. Tibbets, of Hite, Fanning & Honeyman, L.L.P. Defendant, Progressive Northern Insurance Company (hereafter Progressive or Defendant), appears by Kevin M. McMaster and Dallas L. Rakestraw of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. There are no other appearances. The Court has jurisdiction over adversary proceedings alleging violation of the automatic stay.[1]

**FINDINGS OF FACT.**

The allegation of violation of the stay arises from the Trustee's attempt to recover, for the benefit of the estate, damages suffered by Debtors George and Ivy Hokanson in a prepetition automobile accident. The underlying facts are not in dispute.

On December 19, 2003, Debtors were injured in an automobile accident. The other vehicle was driven by Karen Lambert, who was insured by Allstate Insurance Company (hereafter Allstate). Debtors had Personal Injury Protection (PIP) pursuant to a policy of insurance they had purchased from Defendant Progressive. Defendant paid PIP benefits of $9,000 to Debtors pursuant to that policy.

On July 21, 2004, Debtors filed a voluntary petition under Chapter 7, and their claim against Karen Lambert became property of the estate. Plaintiff Linda S. Parks was appointed

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for relief from stay is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

case trustee. On December 8, 2005, more than 18 months after the accident, the Trustee filed suit in Kiowa County, Kansas against Karen Lambert. That suit is pending.

Progressive and Allstate are members of an intercompany Personal Injury (No-Fault) Arbitration Agreement handled through Arbitration Forums, Inc.[2] Pursuant to that agreement, they agreed to arbitrate "all disputes arising from the pursuit of subrogation, reparations, reimbursement, indemnity or direct action recovery rights created by the payment of claims or benefits to insureds . . . under Automobile Accident Reparations Statutes, or in the absence of a statute those subrogation claims created by a Voluntary Personal Injury Protection Endorsement."[3] The Personal Injury Protection Arbitration Rules and Regulations[4] applicable to the arbitration agreement require the applicant for reimbursement of PIP payments to provide the name of the respondent company's insured and date and place of the alleged accident. The respondent company's answer must include whether coverage and liability as alleged by the applicant are admitted. An allegation of coverage denial is considered a jurisdictional impediment, which must be cleared before the arbitration may proceed. Further, the applicable rules and regulations provide that the agreement to arbitrate "shall not be considered to create any causes of action or liabilities not existing in law or equity."[5]

On December 13, 2005, just a week after the Trustee filed suit against Karen Lambert, Progressive filed an arbitration claim against Allstate to recover the $9,000 in PIP benefits

---

[2] Doc 62, exh. G.

[3] *Id*.

[4] *Id*.

[5] *Id.*

3

payments it made to Debtors. In the absence of a response from Allstate, on March 20, 2006, an award of $9,000 was entered in favor of Progressive.

By letter dated August 9, 2006, the attorney for the Trustee advised Progressive that the Trustee viewed Defendant's seeking of recovery from Allstate to be an interference with her personal injury suit and a violation of the stay. Thereafter, Progressive filed a state court lawsuit asking for enforcement of its arbitration award.[6]

On October 30, 2006, the Trustee filed her Complaint for willful violation of the stay. The Trustee alleged that Progressive's arbitration claim was an attempt to collect funds from property of the estate committed with knowledge that a bankruptcy stay existed.[7] In response, Progressive alleged, in part, that the Court lacks jurisdiction over this proceeding. The Court requested and received briefs on the jurisdiction defense.

**POSITIONS OF THE PARTIES AND PRIOR RULING OF THE COURT.**

Progressive's brief on the Court's jurisdiction asserts that Progressive has made no claim to any property of the estate. It agrees that the Trustee has the right to pursue the personal injury claim against Karen Lambert and, if she is awarded a judgment, to collect that judgment for the benefit of the estate. However, Progressive argues that before a judgment is entered in her favor in the Kiowa County case, the Trustee has no right to any liability policy proceeds. Progressive

---

[6] The Court was advised at oral argument on Progressive's motion to alter or amend that the enforcement action has been stayed.

[7] Progressive controverts that it had knowledge of the bankruptcy filing for purposes of finding a willful violation of the stay. This contention appears disingenuous in light of correspondence from the Trustee to Progressive, including a letter dated September 20, 2005 from Gaye Tibbets to Carla Travis, Progressive Insurance Company, advising that she represented the bankruptcy trustee who "now owns Mr. Hokanson's claim for personal injuries against Ms. Lambert." Doc. 62, exh. B.

4

also asserts it has made no claim to any proceeds of the estate's personal injury recovery and the arbitration is a dispute between two insurance companies that is independent of the bankruptcy.

In her brief on jurisdiction, the Trustee responds that Debtors, as parties injured in an automobile accident involving a vehicle driven by Karen Lambert, on the date of filing had an interest in the Allstate policy, which, together with the right to pursue Karen Lambert, passed to the Trustee. She relies upon the Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 to 40-3121 (KAIRA), for the proposition that Progressive's right to recover the PIP benefits paid to an insured is limited to two alternatives, neither of which are available once the tort victim has filed for Chapter 7 relief. In support of stay violation, the Trustee asserts in her brief that Progressive's arbitration award against Allstate is interfering with her ability to settle the tort claim.

The Court entered a Memorandum on Defense of Lack of Subject Matter Jurisdiction on December 10, 2007 (hereafter Memorandum).[8] It concluded that the estate had a property interest in the Allstate policy owned by Karen Lambert at the time of the accident and that Progressive violated the stay when seeking reimbursement from Allstate for the PIP payments. That Memorandum invited the parties to file motions for reconsideration, stating:

> The Court has undertaken its analysis and made its findings of fact and conclusions of law based upon a limited record and on a basis not directly briefed by the parties. If the factual assumptions are contrary to the true circumstances or the Court, in the opinion of counsel, has misconstrued significant issues of law, the Court invites the parties to within 10 days file motions to alter or amend this order pursuant to Bankruptcy Rule 9023 . . . .

---

[8] Doc. 66.

Progressive filed a motion to alter or amend on December 19, 2007.[9]

Progressive's motion asserts that the Court's Memorandum went beyond the jurisdiction issue and relied upon facts which were not in evidence. Oral argument was held on January 23, 2008. Progressive argued that the Court assumed, without supporting evidence, that Allstate would not settle because of Progressive's arbitration award and that the Trustee was entitled to recovery from Lambert. Progressive, without providing legal authority, reiterated its position that the arbitration award has nothing to do with the relationship between Allstate and Lambert and that Allstate may have to pay the amount of PIP payments made to Debtors by Progressive twice, once to Progressive pursuant to the arbitration award and once to Debtors as a part of their damage claim. At oral argument, counsel for the Trustee, in the face of Progressive's assertion that there was no evidence regarding Allstate's raising the arbitration award in settlement negotiations, retreated from her argument that the alleged stay violation was related to her ability to settle with Lambert, and reasserted the argument that the estate had an interest in the Allstate policy on the date of filing, an argument that had been presented in opposition to an earlier motion of Progressive to stay this adversary proceeding until after resolution of the tort claim.[10]

Having considered all of the foregoing, and based upon the following analysis, the Court now grants Progressive's motion for reconsideration and issues this Memorandum Opinion and Order which supercedes the prior Memorandum on Defense of Lack of Subject Matter Jurisdiction, filed on December 10, 2007. For the reasons stated herein, the Court finds that it has subject matter jurisdiction.

---

[9] Doc. 69.

[10] Doc. 30. Progressive's motion to stay proceedings (Doc. 29) was denied. Doc. 37.

6

Case 06-05492   Doc# 74   Filed 02/27/08   Page 6 of 18

**ANALYSIS AND CONCLUSIONS OF LAW.**

     **A. RIGHTS AND REMEDIES OF AUTOMOBILE ACCIDENT VICTIMS AND INSURERS.**

Before analyzing the parties' legal contentions, the Court pauses to examine under Kansas law the rights and liabilities of automobile accident victims and the insurance carriers involved. Under Kansas law, an automobile insurance policy is considered a policy of indemnity.[11] Ordinarily, an automobile liability policy includes a duty to defend and imposes an obligation to settle claims against the insured in good faith and without negligence.[12] Under such a policy, "[p]rior to a final judgment there is no duty on the part of the insurer to make any payment and it may not be sued alone or as a codefendant."[13] An injured party has a claim in tort against the tortfeasor, but no right of direct action against the tortfeasor's liability carrier.[14] If a judgment against the tortfeasor is not satisfied, the injured party may not file an action against the tortfeasor's liability carrier on the same claim, but may garnish the tortfeasor's liability carrier to enforce the tortfeasor's rights under the liability policy.[15] Nevertheless, even before liability of the insured is determined, an injured party does have an interest the tortfeasor's liability policy sufficient to require joinder in any declaratory judgment action adjudicating

---

[11] *White v. Goodville Mut. Cas. Co.*, 226 Kan. 191, 194-95, 596 P.2d 1229, 1232 (1979).

[12] *E.g, Bollinger v. Nuss,* 202 Kan. 326, 449 P.2d 502 (1969).

[13] *White v. Goodville Mut. Cas. Co.*, 226 Kan. at 194, 596 P.2d at 1232.

[14] *Id.*, 226 Kan. at 194-95, 596 P.2d at 1232-33.

[15] *King v. Am. Family Ins. Co.*, 19 Kan. App.2d 620, 874 P. 2d 691 (1994).

7

coverage, even though the rights against the insurer are contingent upon recovery of a judgment against the insured.[16]

There is often a substantial delay between the date of accident and recovery of damages. The Kansas legislature has therefore enacted the KAIRA.[17] "The purpose of [the KAIRA] . . . is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."[18] Pursuant to the KAIRA, each liability policy must contain a provision for personal injury protection (PIP) benefits,[19] defined to include disability benefits and medical benefits.[20] The KAIRA addresses recovery by an insurance carrier which has made PIP payments.[21] K.S.A. 40-3113a in relevant part provides:

---

[16] *Heinson v. Porter*, 244 Kan. 667, 671-72, 772 P.2d 778, 782-83 (1989), *overruled on other grounds by Glenn v. Fleming*, 247 Kan. 2296, 799 P.2d 79 (1990).

[17] Kansas Automobile Injury Reparations Act, K.S.A. 40-3101 to -3121.

[18] K.S.A. 40-3102.

[19] K.S.A. 40-3107(f).

[20] K.S.A. 40-3103(q).

[21] In addition, Progressive's recovery rights are addressed by the policy issued to the Debtors as follows:

> **5. Our Recovery Rights**
> In the event of any payment under the Policy, we are entitled to all the rights of recovery of the person or organization to whom payment was made. . . .
>
> When a person had been paid damages by us under this Policy and also recovers from another, the amount recovered from the other shall be held in trust for us and reimbursed to us to the extent of our payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their loss.

8

(a) When the injury for which personal injury protection benefits are payable under this act is caused under circumstances creating a legal liability against a tortfeasor . . . , the injured person . . . shall have the right to pursue such person's remedy by proper action in a court of competent jurisdiction against such tortfeasor.

(b) In the event of recovery from such tortfeasor by the injured person, . . . by judgment, settlement or otherwise, the insurer . . . shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer . . . may intervene in any action to protect and enforce such lien. . . .

(c) In the event an injured person, such person's dependents or personal representative fails to commence an action against such tortfeasor within 18 months after the date of the accident resulting in the injury, such failure shall operate as an assignment to the insurer . . . of any cause of action in tort which the injured person, . . . may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits. Such insurer or self-insurer may enforce same in such person's own name or in the name of the injured person, . . . by proper action in any court of competent jurisdiction.

In this case, the Progressive policy included PIP coverage. The policy provides, "If you purchase this coverage and it is shown on the Declarations page, we will pay medical expenses incurred by an insured caused by an accident."[22] Accordingly, after the accident but before Debtors filed for bankruptcy protection, Progressive paid PIP benefits to Debtors.

Pursuant to the KAIRA, when making PIP payments, Progressive acquired two distinct interests, a subrogation right and a lien in any duplicative recovery.[23] Under Kansas law, in the event the injured parties recover by judgment, settlement or otherwise, the injured parties' insurer is subrogated to the extent of duplicative PIP benefits provided and granted a statutory

---

[22] Doc. 62, exh. A.

[23] *In re White*, 297 B.R. 626, 630 (Bankr. D. Kan. 2003).

9

lien for such benefits against the recovery, including the right to intervene in any action to protect and enforce the lien right.[24] Further, if, as in this case, the injured party does not bring suit to recover from the tortfeasor within 18 months of the injury, the PIP insurer may sue the tortfeasor to recover damages which are duplicative of personal injury protection benefits.[25] The injured party's rights against the tortfeasor are not eliminated by the PIP carrier's intervention rights or statutory assignment, and the "injured party remains in full and complete control of the cause of action no matter when, within the period of limitations, the injured party files suit."[26] However, when the injured party's actual damages exceed the insurance coverage, the PIP carrier has no right to reimbursement from the injured party.[27]

The parties agree that Debtors' filing for bankruptcy relief has modified the foregoing rights in three significant respects. First, Debtors' claim against Karen Lambert became property of the estate, and the Chapter 7 Trustee became the party with the right to sue.[28] Second, the automatic stay of § 362 was imposed, generally prohibiting actions to recover property of the estate or to assert claims against the Debtors. Third, Progressive's subrogation and lien rights were cut off because they were not vested on the date of filing.[29] K.S.A. 40-3113a(b), the statutory source of Progressive's rights, has been construed to state that the right of subrogation

---

[24] K.S.A. 40-3113a(b).

[25] K.S.A. 40-3113a(c).

[26] *Foveaux v. Smith*, 17 Kan. App.2d 685, 694, 843 P.2d 283, 290 (1992).

[27] *Kansas Farm Bureau Ins. Co. v. Miller*, 236 Kan. 811, 817-18, 696 P. 2d 961, 967 (1985).

[28] *E.g., Nazar v. Allstate Ins. Co. (In re Veazey)*, 272 B.R. 486, 493 (D. Kan. 2002).

[29] *Id.*, 272 B.R. at 494-95; *In re White*, 297 B.R. at 630-35.

10

and the insurer's lien arise only after a recovery from the tortfeasor.[30] In this case, if there is recovery from Karen Lambert, the recovery will not occur until long after the bankruptcy filing, at a time when the stay will prohibit Progressive's assertion of rights to the recovery under a subrogation theory or attachment of a lien in the proceeds. Obviously, Progressive's right under the KAIRA to sue the tortfeasor in its own name or in Debtors' names because Debtors did not sue within 18 months of the accident was also abrogated by the bankruptcy filing. All of Debtors' rights against Lambert passed to the Trustee. Likewise, an insurer's claim to exclusion from the bankruptcy estate of duplicative recovery under a constructive trust theory based upon policy language similar to that in the Progressive policy[31] has been rejected under Kansas law.[32] Progressive agrees that it has no right to pursue Debtors or to pursue Karen Lambert as subrogee of Debtors and will have no lien on or interest in any portion of the recovery by the Trustee. As to Debtors and the estate, Progressive's right to reimbursement is an unsecured claim.

To recover its PIP payments, Progressive elected to pursue a method of recovery not addressed by the KAIRA, the validity of which has not been the subject of reported decisions in Kansas. After the Trustee sued Lambert in state court, Progressive filed an arbitration action against Allstate to recover the PIP benefits paid to Debtors. The substantive basis for the claim has not been provided to the Court.[33] Allstate permitted an award for the $9,000 PIP coverage

---

[30] *Id.*

[31] *See* note 21, quoting policy provision.

[32] *In re White*, 297 B.R. at 635-36.

[33] Progressive did not respond to the merits of the Trustee's legal argument that Progressive lacks authority to recover from Allstate, and the Court will not rule on this question. However, pursuant to the Personal Injury Protection (No-Fault) Arbitration Agreement in the record, the signatory insurance companies agreed to arbitrate "all disputes arising from the pursuit of subrogation, reparations,

11

paid to the Debtors to be entered against it. Progressive has filed an action in state court to enforce the award.

### B. THE ESTATE HAS AN INTEREST IN THE ALLSTATE POLICY.

Turning to the merits of this case, the Trustee's Complaint is for violation of the § 362 stay, specifically §§ 362(a)(3) (acts to obtain possession of property of the estate or property from the estate), (a)(4) (acts to create, perfect or enforce any liens against property of the estate), and (a)(5) (acts to create, perfect or enforce any lien against property of the debtor). "The stay of section 362 is extremely broad in scope and, aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate."[34] The subsections of § 362 on which the Trustee relies address acts against property of the estate and property of the debtor. Section 541 defines property of the estate to include "all

---

reimbursement, indemnity or direct action recovery rights created by the payment of claims or benefits to insureds . . . under Automobile Accident Reparations Statutes, or in the absence of a statute those subrogation claims created by a Voluntary Personal Injury Protection Endorsement." However, pursuant to the Personal Protection Arbitration Rules and Regulations, the arbitration agreement shall not be considered to create "any cause of action or liabilities that do not exist in law or equity." Progressive identifies no source for a cause of action against Allstate. Although at one time the KAIRA authorized an insurer who paid PIP benefits to recover directly from the tortfeasor's liability carrier through arbitration, the current KAIRA contains no such provision. *See Easom v. Farmers Ins. Co., Inc.*, 221 Kan. 415, 420-21, 560 P.2d 117, 122 (1977) (interpreting subsection (d) of K.S.A. 40-3113 as providing the insurer who does not bring suit against the third party tortfeasor the alternative of "arbitration of reimbursement between the injured party's insurer and the insurer of the tort-feasor, if insured"). K.S.A. 40-3113 was repealed in 1977 and K.S.A. 40-3113a enacted in its place. L. 1977 ch. 164. The new provision omitted the insurers' right of action against the tortfeasor and right to arbitrate with the tortfeasor's carrier. The right of a no-fault insurer to pursue the tortfeasor's insurer to recover benefits paid generally is statutory. *See* 16 *Couch on Insurance 3d* §225.88; *Allstate Ins. Co. v. Safeco Ins. Co.*, 99 Or. App. 162, 781 P.2d 399 (1989) (relying upon Oregon statue when holding that automobile insurer, whose policy gave it a right of subrogation, was not entitled to reimbursement from other driver's insurer for PIP benefits paid); and *Nationwide Mut. Ins. Co. v. Schwartz*, 172 Misc.2d 503, 660 N.Y.S.2d 623 (1997) (holding PIP insurer could not bring direct action against liability insurer, citing New York statute).

[34] 3 *Collier on Bankruptcy* ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

legal or equitable interests of the debtor in property as of the commencement of the case." The Tenth Circuit has pointed out that the scope of "section 541 is broad and should be generously construed, and that an interest may be property of the estate even if it is 'novel or contingent.'"[35] The determination of property rights in the assets of the estate is determined under state law.[36]

It is well settled that upon the filing of a bankruptcy, any causes of action belonging to the Debtor at the time of filing become property of the estate pursuant to § 541(a)(1).[37] This includes claims that are contingent and unliquidated. "Congress' clear intent [was] that contingent interests are to be included in the property of a bankruptcy estate."[38] Also included in property of the estate are all "proceeds, product, offspring, rents, or profits of or from property of the estate."[39] The term "proceeds" is not defined by the Code. Although it includes proceeds as defined by the Uniform Commercial Code, it is not limited to this meaning.[40]

Applying these principles to this case, the Debtors' claim against Karen Lambert is property of the estate. The claim existed under Kansas law on the date of filing, even though it was unliquidated. All proceeds of the claim are also property of the estate. Progressive agrees the stay bars it from asserting a lien in any future proceeds of the tort claim or pursuing a subrogation claim. The question posed by this case is whether without violation of the stay

---

[35] *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000).

[36] *Butner v. United States*, 440 U.S. 48, 57 (1979).

[37] *E.g., Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996); *In re Veazey*, 272 B.R. at 493.

[38] *In re Montgomery*, 224 F.3d at 1195.

[39] 11 U.S.C. § 541(a)(6).

[40] 5 *Collier on Bankruptcy* ¶ 541.17.

13

Progressive can do indirectly what it cannot do directly and be reimbursed through the procedure of an arbitration award against Allstate.

The Court holds that the property which Progressive seeks to recover in the arbitration is property of the estate within the meaning of § 541. The arbitration agreement and applicable arbitration rules clearly establish that Progressive's claim against Allstate for reimbursement of PIP payments is grounded upon Allstate's liability policy with Lambert and coverage for the accident with Debtors. Progressive seeks recovery from Allstate not in its corporate capacity, but in its capacity as insurer for Lambert. The Court concludes that Progressive is attempting to recover a portion of the policy proceeds to reimburse it for the PIP payments made to the Debtors. These funds sought by Progressive are precisely the same funds which are property of the estate because they are potential proceeds of the estate's personal injury claim against Lambert.[41]

Under Kansas law, Debtors, as the injured parties, have a contingent claim to all amounts payable under the Allstate policy. Debtors, and therefore the Trustee, are subrogated to Lambert's claims against the liability insurer to require payment in accord with policy terms to satisfy any judgment up to policy limits or for bad faith failure to defend or settle, contingent upon recovery of an unsatisfied judgment.[42] Kansas law recognizes the significant interest of the Debtors, as injured parties, in the coverage provided by Lambert's liability carrier.[43] There is no portion of the policy proceeds to which Progressive as the Debtors' PIP carrier has a superior

---

[41] 11 U.S.C. § 541(a)(6).

[42] *King v. Am. Family Ins. Co.*, 19 Kan. App.2d at 620, 874 P. 2d at 691.

[43] *Heinson v. Porter*, 244 Kan. at 671-72, 772 P.2d at 782-83.

14

claim. Section 541 should be liberally construed to include all interests of Debtors in property for the benefit of their creditors. If all contingent interests of the Debtors in the amounts which may be paid to the Trustee pursuant to the Allstate policy are not included in the estate, the purpose of § 541, and the protection afforded by its companion § 362, would be compromised.

Progressive's argument that the estate cannot have a property interest in the insurance as proceeds of the personal injury claim because there has been neither a judgment nor a settlement is unavailing. The bankruptcy estate includes contingent and unmatured claims, provided that they are rooted in the bankrupt's prepetition past.[44] The Code's inclusion in the estate of all legal and equitable interests of the debtor evidences Congress' "intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time."[45] The contingent claim of the Debtors to the Allstate policy payments as proceeds of their personal injury claim is rooted in their prebankruptcy past; the accident occurred prepetition. The fact that the Trustee's rights against Allstate via any subrogation to the interests of Lambert do not mature until after an unsatisfied judgment "is not an impediment to its inclusion in the bankruptcy estate."[46]

Progressive's argument that the Court lacks jurisdiction because the arbitration claim is against Allstate rather than the Debtors is also unavailing. The stay of § 362 applies to actions to recover property of the estate, even though the named defendant is a third party rather than the

---

[44] *In re Edmonds*, 263 B.R. 828 (Bankr. E.D. Mich. 2001), *citing Segal v. Rochelle*, 382 U.S. 375 (1996).

[45] *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425 (9th Cir. 1984).

[46] *In re Montgomery*, 224 F.3d at 1195.

15

Case 06-05492    Doc# 74    Filed 02/27/08    Page 15 of 18

debtor.[47]  For purposes of determining the scope of the § 362 stay, the stay should apply to actions to acquire property from Allstate, based upon the policy with Lambert and the accident with Debtors, to the same extent it applies to actions to assert a lien in the proceeds of the personal injury claim.  Absent such a construction, the purpose of the stay to prevent "the debtor's estate from being picked to pieces by creditors" would not be realized.[48]

To adopt Progressive's position that it may recover postpetition from Allstate would negate the effect of the stay with respect to Progressive's subrogation and lien rights pursuant to the KAIRA.  The reality is that enforcement of Progressive's arbitration award to recover reimbursement of the PIP payments from Allstate would have the same impact on the Trustee's tort litigation and recovery as would Progressive's direct assertion of its subrogation claim or a lien in the recovery, acts which Progressive agrees are prohibited by the stay.  Since the arbitration award seeks a portion of the same insurance proceeds as the Trustee hopes to recover, the award is likely be a factor in settlement negotiations of the Trustee regarding the personal injury claim.[49]

In opposition to this view, Progressive argues that "[w]hat Progressive has pursued is its contractual right against Allstate, pursuant to the Personal Injury No-Fault Arbitration Agreement" and even if the arbitration award is paid it "will not abrogate the Trustee's ability to

---

[47] *Kaiser Group Intern'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 315 B.R. 655, 659 (D. Del. 2004).

[48] *Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996).

[49] At oral argument, counsel for the Trustee asserted that Debtors' claim may exceed the Allstate policy limits.

16

obtain full recovery from Allstate."[50] In other words, Progressive asserts that Allstate may have to pay twice — once to Progressive and once to the Trustee. But Progressive provides absolutely no authority to support this position, which the Court questions.[51] In the Memorandum, which is being reconsidered pursuant to Progressive's motion, the Court questioned the legal basis for Progressive's claim against Allstate asserted through the arbitration proceedings. It pointed out that the Kansas statutes which previously gave the PIP carrier an arbitration claim against the tortfeasor's liability carrier had been repealed[52] and pursuant to the Personal Injury Protection Arbitration Rules and Regulations, the arbitration agreement shall not be construed to create "any cause of action or liabilities that do not exist in law or equity."[53] Although invited to point out any errors of law, when moving for reconsideration and presenting oral argument, Progressive failed to allege specific error in the Court's view of the basis for Progressive's claim against Allstate. The Court finds that Progressive's claim against Allstate enforced through the arbitration procedure is not independent of the bankruptcy estate's interest in the Allstate policy.

**CONCLUSION.**

The Court therefore holds that the estate has a property interest in the proceeds of Debtors' tort claim, which proceeds include rights under the Allstate policy owned by Karen Lambert at the time of the accident. The Court has jurisdiction to find that Progressive's pursuit

---

[50] Doc. 64.

[51] *See* note 33.

[52] L. 1997 ch. 164, repealing K.S.A. 40-3113 and enacting K.S.A. 40-3113a.

[53] Doc. 66, note 16.

of the arbitration claim against Allstate is a violation of the § 362 stay because it seeks recovery from property of the estate. Progressive's motion to alter or amend is granted, and this Memorandum Opinion and Order supercedes the previously entered Memorandum on Defense of Lack of Subject Matter Jurisdiction, filed on December 10, 2007.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**IT IS SO ORDERED.**

###